NANSEMOND BRICK CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9228.   Promulgated October 31, 1927.

Value of assets determined for purposes of invested capital and depreciation.

*R. Palmer Ingram, Esq.*, and *Fred F. Ames, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits taxes for the calendar year 1920 in the amount of $402.63.   Petitioner assigns as error the action of respondent in holding that its invested capital could not be satisfactorily determined.   By amendment to the answer, respondent alleges that an excessive allowance for depreciation was included in the computation of the deficiency and prays that the net income of the petitioner be adjusted on the basis of the proper allowance therefor.

### FINDINGS OF FACT.

Petitioner is a Virginia corporation, with its principal office at Norfolk.   It was organized in August, 1917, with an authorized capital stock of $60,000.

Under date of August 1, 1917, J. B. Moss entered into a contract to purchase, for $50,000 cash, all of the physical assets of the Nansemond River Brick & Tile Co., consisting of about 600 acres of land, located in Nansemond County, Virginia, together with all of the improvements thereon, and particularly including the buildings, machinery and equipment, constituting a plant for the manufacture of brick.   Upon the organization of petitioner, this contract was transferred to it in consideration of the issuance to Moss and his associates of its capital stock of the par value of $60,000.   Petitioner carried out the contract of purchase, and on or about August 15, 1917, took over the assets in question, paying therefor $40,000 in cash, and 1,000,000 bricks at an agreed valuation of $10,000.   Petitioner obtained the cash, paid as part consideration for the assets, by borrowing the money under a first mortgage on the property acquired.   It was unable to float the loan on the security of the mortgage only, and to that end found it necessary to obtain thereon the personal endorsement of Moss & Moss, of which firm J. B. Moss was a member, and Townsend, Scott & Son, associates of Moss.   The assets acquired by petitioner included, in addition to the brick manufacturing plant, several hundred acres of farm land, buildings and

farm implements, machinery, growing crops, and live stock. The brick plant was constructed in 1901 or 1902 and originally cost, together with the farm land and all equipment, approximately $125,000. At the time of acquisition, petitioner appraised the value of the assets so purchased by it at a total valuation of $119,337. Certain adjustments were made later, and the value of the assets set up on petitioner's books at $122,898.52.

OPINION.

TRAMMELL: The record of this proceeding presents two issues for consideration. The first involves the question of whether the statutory invested capital of petitioner can be satisfactorily determined. Respondent determined a deficiency in tax for the year 1920 in the amount of $402.63 and, in the statement accompanying the deficiency letter, said:

\* \* \* The Bureau holds that the denial of your application for the determination of your profits tax under the provisions of Section 328 of the Revenue Act of 1918 was proper.

The Bureau further holds that in the absence of evidence of value of the capital stock issued, it cannot satisfactorily determine the statutory invested capital. Your profits tax has, however, been computed under the provisions of Section 302 of the Revenue Act of 1918, for the reason that the profits tax computed under the aforesaid Section is not in excess of the average of representative concerns and imposes no hardship on your company.

Petitioner asserts in its pleading that its invested capital at organization was $60,000, and that its invested capital for the year 1920 was the same amount. At the hearing, petitioner offered some evidence in an effort to show that its invested capital at organization was in fact $82,898.52, consisting of the par value of stock in the amount of $60,000, plus the amount paid with brick at a valuation of $10,000 and plus a paid-in surplus of $12,898.52.

The second issue is raised by respondent in an amendment to his original answer, wherein it is alleged that an excessive amount was allowed as depreciation for the year 1920, erroneously based upon an appreciated valuation of approximately $60,000. Respondent prays that petitioner's net income for the year in question be adjusted to include a proper allowance for depreciation.

With respect to the first issue, the evidence shows that J. B. Moss, an investment banker of Norfolk, Va., and a member of the firm of Moss & Moss, entered into a contract for the purchase of the physical assets of the Nansemond River Brick & Tile Co. for the sum of $50,000 cash. Petitioner was thereupon organized and the contract transferred to it in consideration of the issuance to Moss and his associates of its authorized capital stock in the amount of $60,000. Petitioner promptly carried out the contract and acquired the assets

under the terms of the contract, as set out in our findings of fact. Petitioner paid directly to the seller the sum of $50,000 in cash or its equivalent for the assets. Of this amount $40,000 was borrowed money.

The Revenue Act of 1918 provides, in section 326 (a), that the term, " invested capital" for any year means, among other things—

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus : * * *

(3) Paid-in or earned surplus and undivided profits ; not including surplus and undivided profits earned during the year.

The contract for which petitioner issued its capital stock related to rights in tangible property to such an extent that its value, if any, arose chiefly therefrom. The contract itself was, therefore, tangible property. That the contract was bona fide paid in for stock or shares of the petitioner is not disputed. Accordingly, the petitioner is entitled to include in its invested capital the actual cash value of the contract, if any.

Under this contract, the petitioner acquired the right to purchase the tangible assets of the Nansemond River Brick & Tile Co. for the sum of $50,000 cash. If those assets had an actual cash value in excess of $50,000, such excess value would represent the value of the contract, and under the statutory provisions above quoted the petitioner would be entitled to include that amount in its invested capital. If the value of the contract exceeded the par value of the stock, the excess must be treated as paid-in surplus, and as such included in invested capital. *Appeal of Sphar Brick Co.*, 2 B. T. A. 946.

The first issue is thus resolved into the question, what was the actual cash value of the assets acquired by the petitioner on August 15, 1917, under the contract for which it issued its capital stock? If this question can be satisfactorily answered, it is self-evident that the petitioner's statutory invested capital can be determined.

Petitioner offered the testimony of several witnesses on this question, who expressed their opinions as to the value of the assets. Their opinions, however, are not corroborated by the established facts and circumstances in the case and are not convincing. Petitioner sought to establish by the testimony of its witnesses that the aggregate value of the assets at date of acquisition was $122,898.52, but no reasonable basis for the opinions of the witnesses was disclosed. The evidence as a whole does not convince us that the assets had an actual cash value in excess of the contract price of $50,000, nor does the record before

us disclose that the vendor was under any necessity to sacrifice the property. Apparently it was quite willing to accept $50,000 cash therefor. On the other hand, the original tax return filed by the petitioner for the year 1920, contains in Schedule A 18 attached thereto, the following statement: " This plant was in a state of decay when acquired in 1917. Depreciation was consequently abnormal."

Considering the evidence as a whole, we are unable to say that the assets, at the date acquired by the petitioner, had any substantial value in excess of the contract price of $50,000. Petitioner having issued its entire capital stock for the contract, and the contract not having been shown to possess any value in excess of the amount required thereunder to be paid for the assets, petitioner is not entitled to include in its statutory invested capital any amount by reason thereof.

It appears from the record that the respondent admits that the petitioner is entitled to include as a part of invested capital the sum of $10,000, being the amount of the agreed cash value of the manufactured bricks paid as part consideration for the assets in question. Whether this amount constitutes paid-in or earned surplus, we are unable to determine from the evidence before us. However, whether the petitioner has no statutory invested capital, or is entitled to an invested capital of $10,000, it is our opinion that either situation would bring it within the abnormality provisions of section 327, and require the computation of its profits tax under the provisions of section 328 of the Revenue Act of 1918.

It appears from the quotation from the deficiency letter, hereinbefore set out, that respondent computed the profits tax involved herein under the provisions of section 302, for the reason that the profits tax so computed was not in excess of that computed under the provisions of section 328. Section 302, providing limitations on the amount of the profits tax imposed by section 301, is controlling over section 328 as well as section 301, and if the tax computed under section 328 exceeds the amount of the tax computed under section 302, the computation under the latter section applies. *Davis & Andrews Co.*, 2 B. T. A. 328. It appears that this procedure was substantially followed by the respondent in computing the deficiency herein, and his action to that extent is approved.

Before concluding consideration of the first issue, since it may be affected by the second issue, the latter will be considered. The second issue relates to excessive depreciation, based upon an appreciated valuation of the assets. As indicated above, the petitioner has failed to establish a value of the assets in excess of $50,000, at the time of purchase in 1917. Accordingly, the allowance for depreciation for the year 1920 should be computed upon the basis of that valuation.

This will tend to increase the amount of the petitioner's net income. Accordingly, after computation of the net income on the basis indicated, the profits tax should be recomputed under the provisions of section 328 of the Revenue Act of 1918, subject to the limitations of section 302 of that Act, and the deficiency so computed shall be final.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MORRIS, MURDOCK, and SIEFKIN.